

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                                ) Case No. 00-21872-C-7
                                      )
HERMAN PEREZ,                         ) Adversary No. ~~05-2002~~
                                      )                04-2365
          Debtor(s).                  )
_____)
                                      )
HERMAN PEREZ,                         )
                                      )
          Plaintiff(s),               )
                                      )
v.                                    )
                                      )
CATHY PEREZ, aka CATHY MORITZ         )
McKINNEY,                             )
                                      )
          Defendant(s).               )
_____)

FILED

JUN 9 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial of this adversary proceeding was held on June 7, 2005. Herman Perez and Cathy Perez, also known as Cathy Mortiz McKinney, were married September 19, 1995, and separated as early as May 28, 1998, in a process in which Mr. Perez moved out, returned, and left again.

At the time of the marriage, Mr. Perez owned a residence at 26942 Madison Street, Esparto, California.

In 1996 Mr. and Mrs. Perez transmuted her residence into community property by appropriate deed. In a loan transaction dated June 1, 1998, Mr. and Mrs. Perez borrowed $35,000 from Firstplus Financial, Inc., secured by a deed of trust on their residence. Of that sum, $28,603 was used to pay off a prior existing debt, settlement charges to borrower were $3,737.50, and



the proceeds paid directly to Mr. and Mrs. Perez were $2,659.50, which sum they divided among themselves. The $28,603 that was used to pay existing loans reflected credit card debt that had built up during the marriage and that was in the nature of community debt.

Mrs. Perez lost her job when her employer closed in 1997, at which time she received a severance package of approximately $7,000 (it is not clear whether that was merely a distribution of pension proceeds or some other income).

Mrs. Perez opened a daycare center. Various items were purchased to provide the facilities for the daycare center. In addition, a van was purchased.

The daycare center did not thrive. The IRS form Schedule C, Profit or Loss from Business (Sole Proprietorship), reflects a net loss of $2,042 in 1997, a net loss of $2,672 in 1998, and a net profit of $14,407 in 1999.

Mrs. Perez filed for divorce on June 30, 1999, based on irreconcilable differences. The petition requested that Herman Perez pay the second mortgage on the residence on which the balance due was said to be approximately $37,000 and that the residence be transferred to Cathy Perez as her sole property. Mr. Perez did not oppose the divorce. A Judgment of Dissolution was entered on August 16, 1999. There was no child or family support provided for nor was there any provision for spousal support. In addition, the Judgment requested that Herman Perez pay the second mortgage and that his interest in the residence be transferred to Cathy Perez.

Mr. Perez complied with the terms of the dissolution order. He deeded his interest in the premises to his former spouse, and he made regular payments on the second mortgage.

Mr. Perez filed a bankruptcy case on February 18, 2000, represented by attorney Harry P. Roth.

The debtor's Schedule A included an attachment stating that Mr. Perez was "to make the payment on the second mortgage to his wife's home in lieu of spousal support."

His former spouse was not listed as a creditor and did not appear on the mailing matrix. She was, however, listed as a co-debtor on Schedule H.

Mr. Perez received a discharge on May 25, 2000. The bankruptcy case was closed on June 1, 2000.

Mr. Perez continued to make regular monthly payments on the second mortgage pursuant to his obligation under the marital dissolution agreement until Mrs. Perez sold the property in August 2003. Specifically, he made monthly payments of $388.17 from July 11, 1999, though August 11, 2003, and prepaid principal in the amount of $208.30.

When Mrs. Perez sold the property, there was a payoff on the loan through the escrow (to Litton Loan Servicing, the then-servicer of the loan) for $33,709.58.

After the house sale closed, Cathy Perez demanded that Herman Perez pay her the $33,709.58 that had been taken from the sale proceeds of her house. This litigation ensued.

The parties did not intend that the loan payoff obligation in the judgment of dissolution of the marriage be in "lieu of spousal support." In addition, it served the purpose of allocating community debt.

Case 04-02365    Filed 06/09/05    Doc 28

## CONCLUSIONS OF LAW

Since the court is persuaded that the parties did not intend that there be spousal support and did not intend that Mr. Perez's promise to pay the second mortgage loan would function in the nature of spousal support, the court is persuaded that the obligation cannot now be characterized as nondischargeable spousal support under 11 U.S.C. § 523(a)(5).

The only possible basis for relief would be under 11 U.S.C. § 523(a)(15), which requires a more nuanced analysis of the current financial condition of the parties and a balance of hardship. If § 523(a)(15) were to be before this court, the outcome might be considerably different because the balance of hardship appears to the court to tilt slightly in favor of Cathy Perez. Nevertheless, § 523(a)(15) is not before this court because the parties have agreed that it is not before this court and agreed to that effect twice: first, before trial; second, during trial.

There is no question that a § 523(a)(15) action was not filed by Cathy Perez before the deadline specified by Federal Rule of Bankruptcy Procedure 4007, which implements § 523(c). There is also no question that Cathy Perez did not know of the existence of Herman Perez's bankruptcy until after the sale of her home in August 2003. Under the circumstances, it would be possible to argue in favor of equitable tolling. This court, however, cannot substitute its judgment for the knowing litigation decision of the parties. The reality is that Mr. Perez could have relied on his discharge to stop making the $388.17 payments when he received his

discharge in 2000, and that he continued making his payments through August 2002,

Accordingly, judgment will be entered in favor of Herman Perez declaring that his obligation to pay the second mortgage as established by the marital decree is not a debt excepted from discharge under § 523(a)(5).

An appropriate judgment will issue.

Dated: June 9, 2005.

_____
UNITED STATES BANKRUPTCY JUDGE

CERTIFICATE OF SERVICE

On the date indicated below, I served a true and correct copy(ies) of the attached document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed and by depositing said envelope in the United States mail or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's Office.

Sean H. Colon
PO Box 370
Woodland, CA 95776-370

Karen Ehler
433 2nd St #101B
Woodland, CA 95695

Dated: 6-10-05

Jennifer Jahnsen
DEPUTY CLERK